■ In the Matter of FRANKLIN C. D'ORNELLAS, JR., Also Known as FRANKLYN C. D'ORNELLAS, JR., Petitioner, v JUAN U. ORTIZ, as Personnel Director of the City of New York, et al., Respondents.—In this proceeding pursuant to CPLR article 78, transferred to this court by order of the Supreme Court, New York County (Kenneth L. Shorter, J.), entered March 13, 1985, challenging respondents' determination of July 13, 1983, which held that petitioner was not qualified for the position of transit police officer, the determination of the respondents is annulled and the petition to reinstate petitioner with back pay to the date of his disqualification on September 2, 1983 is granted, without costs.

In the fall of 1979, petitioner Franklin C. D'Ornellas, Jr., was notified, by a letter addressed simply to Franklin C. D'Ornellas, that he had successfully passed the written examination for the position of Transit Authority railroad clerk. Mr. D'Ornellas, Jr., who was 19 years old at the time, had earlier

taken a number of examinations for the military, employment with the State and city and for various positions with the Transit Authority. It appears however, that he had not taken an examination specifically for the position of railroad clerk. In fact, it was petitioner's father, Franklin C. D'Ornellas, Sr., who had taken that examination in 1974, when petitioner was only 14 years old. The notification was meant for petitioner's father, who was in prison at the time. Yet, the letter did not designate Sr. or Jr. and did not identify as such the Social Security number of the person for whom it was intended. Petitioner believed the notice was intended for him and accepted the position.

On February 4, 1982, petitioner resigned his position as railroad clerk in order to accept an appointment as probationary transit police officer. On May 31, 1983, after a routine investigation, petitioner was given a recommendation of approval for this new position. However, after a payroll audit revealed that petitioner had two Social Security numbers, an investigation into petitioner's background was reopened. At this point it was discovered that petitioner's father had been the one who took the examination for railroad clerk and been offered the position of railroad clerk. Petitioner explained that he had thought the notice was intended for him. Based on this interview, the investigator concluded that petitioner had fraudulently accepted the position of railroad clerk and recommended that his certification as a transit officer be revoked. On July 13, 1983, respondent Personnel Director accepted this recommendation and found petitioner not qualified to continue in his position as transit officer. On September 2, 1983, petitioner's employment was terminated.

Petitioner requested and was granted a hearing before respondent New York City Civil Service Commissioner. Petitioner testified that he did not specifically remember taking the railroad clerk examination but did recall taking examinations for city employment. It is undisputed that petitioner never used any other Social Security number but his own and did not misstate his age or birth date in accepting the railroad clerk position. It was also conceded at the hearing that many appointments could be made for various civil service positions from a qualifying list developed from one particular examination. Thus, the petitioner, who at the age of 19 had tested for a Transit Authority position, believed he had been reasonable in assuming that he had simply been appointed to a position other than that for which he had been tested. On May 29, 1984, the Civil Service Commission affirmed the Personnel

Director's determination of fraud and this article 78 proceeding followed.

We note first that this proceeding was improperly transferred. The hearing before respondent Civil Service Commission was not required by law, but was discretionary, and in such a case the court of first instance must decide whether the challenged determination was arbitrary or capricious. Direct transfer to this court is unavailable in such a case under CPLR 7804 (g). However, the Court of Appeals has ruled that once a proceeding is improperly transferred to this court, we are required to determine all the issues. *(Matter of 125 Bar Corp. v State Liq. Auth.,* 24 NY2d 174, 180.)

On the merits, we agree with petitioner that there was insufficient evidence to establish that he obtained the position of railroad clerk by fraud. The letter offering the position of railroad clerk did not specify any information which would have alerted petitioner to the fact that he was not the person intended by the letter. It was addressed in his name and his father's Social Security number was not identified as such. Further, we conclude that petitioner was reasonable in assuming that he was qualified for the position of railroad clerk as a result of his having presumably qualified on another Transit Authority examination. There was insufficient evidence of fraud, and the determination finding that petitioner had assumed the position of railroad clerk fraudulently was arbitrary and capricious and must be annulled. Concur—Carro, Asch and Rosenberger, JJ.

Sandler, J. P., and Kassal, J., dissent in a memorandum by Sandler, J. P., as follows: Regretfully, I cannot agree that there was an insufficient basis for respondents' conclusion that in 1979 petitioner knew, or should have known, that he had not taken a written examination for the position of Transit Authority railroad clerk and therefore could not have passed such an examination, and that he was not eligible for appointment to that position. No doubt it is possible that petitioner, on receiving the letter reporting that "Franklin C. D'Ornellas" had passed such an examination, was confused as to the positions for which he had taken written examinations, but that possibility is not in my view sufficient to impeach the reasonableness of the contrary inference drawn by the respondents.

Undeniably the result is a sad one. At the time of the event petitioner was 19 years of age, his father was in prison, and he was earnestly seeking honest, gainful employment with the Transit Authority, in addition to various other civil service

positions. Under those circumstances, it is to some extent understandable if in fact he yielded to the temptation presented by the identity of his name to that of his father and attempted to secure a job that, we may reasonably assume, he urgently needed. Arguably, it might have been equally appropriate for respondents to have taken a less severe view of the 1979 incident than was in fact taken, but I do not see how we can conclude, given the obvious reasonableness of the factual conclusion reached by the respondents, that it was arbitrary to determine that petitioner was not qualified to be a transit police officer in 1983.

Accordingly, the May 24, 1984 determination of the respondent New York City Civil Service Commission, which affirmed the July 13, 1983 determination of the respondent New York City Personnel Director that petitioner was not qualified for the position of transit police officer, should be confirmed.